The one seeks to enjoin the Board of Deputy State Supervisors and Inspectors of Elections and each member thereof from acting or proceeding under or in accordance with said statute or holding any elections thereunder which have heretofore been ordered; the other seeks to compel, by mandamus, the mayor of the city of Columbus, Ohio, to order an election demanded by a petition filed by forty per cent, of the voters of a certain district in said city.
The question is presented in each case by demurrer to the petition.
It is contended that this law is in contravention of Section 26 of Article II of the Constitution of Ohio, which provides that “All laws of a general nature shall have a uniform operation throughout the state, nor shall any act except such as relates to public schools be passed to take effect upon the approval of any other authority than the General Assembly, except as otherwise provided in this Constitution.”
It is said that this law is a law of a general nature, and that under this requirement of the Constitution it must operate alike in all the cities of the state, but that by reasons of the provisions contained in Section 9 of the said act it can not .so operate.
*87 The provision which it is claimed prevents the uniform operation of the law is in the following language:
“But nothing contained in the provisions of this act shall ■affect, amend or repeal or alter, in any way, any other law or •ordinance which prohibits throughout the municipality the selling, furnishing or giving away of intoxicating liquors as a beverage, or the keeping of a place where intoxicating liquor is ■sold, furnished or given away as a beverage.”
•The statute in terms is general. Section 1 of the act provides that “whenever forty per cent, of the qualified electors of any residence district of any municipal corporation shall petition the mayor,” etc., an election shall be held. It is contended, lowever, that by reason of the provision contained in Section 9 of the act, the law can have no operation in any municipality in the state of Ohio, where under the provisions of an act passed by the General Assembly of Ohio in the year 1902 (95 O. L., .87-91), and commonly known as The Beal Local Option Law, .an election has been held under that law. It is said that under the terms of the Beal Law the result of an election shall not be disturbed for at least two years, and that, therefore, this law ■can have no operation in such municipalities. It is said that when once the Beal Law becomes operative in any municipality by the holding of an election therein, under its provisions, that before liquor can again be sold in that municipality an election must be held throughout the entire municipality, and that the Brannock Law provides in substance that it shall not in any .respect be in force or operate where the aforesaid Beal Law is in force and operation. It is said that this law can never operate in municipalities which have once voted to exclude the traffic, under the Beal Law.
It seems to us, however, that the Brannock Law will not bear this construction. The language is that the provisions of this ■act shall not “affect, amend or repeal or alter in any way any other law or ordinance which prohibits throughout the municipality,” etc. — that is, this law shall not be construed to be a repeal of the Beal Law or affect the operation of that law where •under it a municipality has excluded the traffic. The object ■and purpose of the law is to operate as a local option law where the condition exists which alone can give rise to its operation, to-wit, the existence of the traffic in intoxicating liquors. It *88 applies to every municipality in the state, and wherever the condition exists which calls for its exercise, it may be invoked “Where the condition does not exist, there is, of course, no necessity to invoke the law.
There is a difference we conceive between the uniform operation of the law and its universal operation. A law may be uniform in its operation, in that it applies to every municipality of the state and yet not universal in its operation, because the condition upon which alone it can operate and become effective •does not exist in certain municipalities. There are many laws upon the statute books which apply in terms to all municipalities and yet do not operate universally. To illustrate, the law authorizes any municipal corporation to construct levees and embankments and improve watercourses passing through the corporation. The law is uniform but it does not operate universally, for in some municipalities the condition which calls for its existence does not exist. Many other like instances might be cited. Wherever the condition exists which makes it necessary or advisable to invoke the provisions of the law, it may be invoked. Whenever, therefore, in any municipality of the state, where under the operation of the Beal Law the traffic in intoxicating liquors does not exist, but again exists as the result of a subsequent election at which a majority of the voters declare in favor of the traffic, the provisions of this law may be invoked, and this, it seems to us, satisfies the constitutional requirement that all laws of a general nature shall have a uniform operation throughout the state. If, in any municipality where, under the Beal Law, at a future election under that law, a majority of the electors vote against excluding the traffic, then we see no reason to claim that the Brannoek Law can not be invoked. True, no further election under the Beal Law can be again held within two years, but that provision can not be held to authorize the traffic within that municipality for two years, for that would be in effect a licensing of the traffic, which the Constitution forbids. It simply places the municipalty in the same position that it occupied prior to the first election at which the traffic was excluded and in the same situation as all other municipalities in the state where the traffic exists. And while no vote in the municipality as a whole under the provisions of the Beal Law can be again had within two years, *89 there is nothing to prevent an election in districts of the municipality under the provisions of the Brannock Law. We think it is not a valid objection to the constitutionality of this law, that because the Legislature has enacted a valid local option law applying to municipalities as a whole and under which certain municipalities have excluded the traffic entirely, this prevents the Legislature from enacting any other law applying to all municipalities which will prevent the exclusion of the traffic from less than the entire territory included within the municipality.
The same objections which are made to the operation of this act might have been urged, it seems to us, against the constitutionality of the township local option law, which the Supreme Court held to be a valid and constitutional enactment, in Gordon v. The State, 46 O. S., 607. When that act was passed, and when it was under consideration by the Supreme Court, the statutes of the state prohibited the sale of intoxicating liquors absolutely within prescribed territory adjacent to certain state benevolent institutions and within two miles of agricultural fairs, etc. The township local option law could not have any operation within these prescribed territories, yet the Supreme Court held that it was a law of a general nature and that it operated uniformly throughout the state. We therefore conclude that this law does not contravene Section 26 of Article II of the Constitution of Ohio.
It is further contended that the result and effect of the Brannock Law is in violation of Section 5, Article XII of the Constitution of Ohio, which provides:
“No tax shall be levied except in pursuance of law, and every act imposing a tax shall state distinctly the object of the same, to which only it shall be applied. ’ ’
Under and by virtue of Section 1536-192, Bates’ Annotated Statutes, 4th Edition, municipal councils are authorized “to levy and collect taxes upon all the real and personal property within the corporation for the purpose of paying the expenses of the corporation, constructing all the improvements authorized, and exercising all the general and special powers conferred by law.”
Section 2926d provides that the expeness of elections shall be paid out of the general revenue fund of the city.
*90 It is said that the Legislature has no right or authority to .authorize the use of any part of the funds derived by general taxation for the benefit of a part only of the people of a municipality. It is undoubtedly true that the public revenue derived from taxation can only be expended for public purposes, •and that no part of it can be expended for a purely private purpose. "We do not understand in what way it is claimed that the operation and effect of the Brannock Law is an infringement of this specific provision of the state Constitution, nor do we think it infringes any requirement of the Constitution in this respect. While the Constitution provides that .taxes shall be levied upon property by a uniform rule, there is no constitutional requirement that they shall be expended in •such manner that each tax-payer shall receive direct benefit therefrom in proportion to his contribution to the public revenue in taxes. This would be impracticable. Indeed, in many cases the public revenue is expended in such manner and for such purposes that apparently no direct benefit accrues to a part of the tax-payers. For instance, all are taxed for the support of the ■common school system, those who have children to educate as well as those who have not; but while there seems to be no direct benefit to a part of the people, there is the indirect benefit which results to all the people of the community from the general education of the children and youth of the community. • So, in the case above referred to, of the construction of levees .along watercourses in municipalities, the direct benefit is entirely, apparently, to those whose property, but for the erection of such barriers, would be submerged in time of floods, and many other instances will readily suggest themselves, in which there seems no direct benefit to a part of the people from the expenditure of the public funds. But if the expenditure of the money be for a public purpose and for the benefit of the public as distinguished from that of mere private individuals, no just complaint can be made upon the ground that a part of the tax-payers receive no direct benefit from the expenditure. The Brannock Law is a measure intended not for the benefit of the individuals of a district alone, but for the benefit of the entire municipality in that it is sought by restricting the traffic to certain localities to thereby minimize its evils and thus benefit the community at large, upon which fall many of the burdens *91 which, arise from the evils resulting from the uncontrolled traffic in intoxicating liquors.
It is further urged that the Brannock Law in question contravenes Sections 1 and 2 of Article I of the Constitution in that property occupied by saloons shall not be counted as either residence or business property in determining what property shall be considered in determining the foot frontage of a street or block; that such property is thereby deprived of the protection of the law accorded to other property.
In this part of the law, Section 4, the General Assembly defines what is meant by the phrase “residence district” and what shall not be contained in such district, namely, certain frontage occupied by buildings and premises actually devoted to business purposes, not including saloons, and in determining the frontage, property occupied by saloons shall not be counted.
Does this deprive any one of acquiring possession and protecting property or deny such the equal protection of the law, within the meaning of Article I, Sections 1 and 2 of the Constitution? We think not.
As remarked by Cook, J., in Lloyd v. Dollison, 23 C. C., 571:
“As a general proposition, all the people of the state should have the same rights and privileges and be subject to the same burdens; but the subject matter of legislation must be considered. ’ ’
By Section 18 of the schedule of the Constitution the General Assembly may by law provide against the evils resulting from the traffic in intoxicating liquors. In enacting the law in question, the General Assembly apparently had in mind the exclusion of the saloons from “residence districts” of municipalities, as distinguished from business districts. In fixing the character of business districts, property occupied by saloons is excluded. We think it is within the discretion of the General Assembly to fix the rule or method of determining the business districts. The denial of the privilege is directed against the business.
Minshall, J., in Adler v. Whitbeck, 46 Ohio State, 575, says:
“The provisions of Section 18 of the schedule of the Constitution has stood since its adoption as a perpetual admonition to all persons engaging in the traffic that in doing so they place their property invested in the business subject to the power of the General Assembly to provide against the evils resulting from the traffic.”
*92 In. Gordon v. The State, 46 O. S.; 637 and 638, Dickman, J., says:
“When the General Assembly was clothed with authority by the Constitution to provide by law against the evils resulting from the traffic in intoxicating liquors, it was left to its discretion, subject to such express limitations as the Constitution imposed, to select the means whereby those evils might be avoided. The Legislature in the plentitude of its discretion having determined the methods of providing against such resulting evils, it would not be for the judicial branch of the state government to interfere.”
If the Legislature in its discretion determines, as it has in the law in question, that the proper way to further restrict the evils resulting from the traffic in intoxicating liquors is to exclude the saloon from residence districts, then it is necessary to fix a rule or method to determine a residence from a business district. And if in fixing such rule or method property occupied by saloons is denied the privilege of participating in determining the character of the business district, then it is one of those disadvantages connected with a business, the conduct of which and the property devoted to which are subject to the legislative will and power from the nature of the subject matter and is not matter for judicial interference.
It is contended that said act is in contravention of Sections 1 and 2 of Article I of the Constitution in that it discriminates against citizens residing in territory sought to be exempted from the operation thereof, thereby rendering said act unconstitutional.
Section 1 of said legislative act provides in substance that whenever forty per cent, of the qualified electors of any residence district of any municipal corporation shall petition * * * for the privilege to determine by ballot whether the sale of intoxicating liquor as a beverage shall be prohibited within the limits of such residence district, then a special election shall be ordered and held therein.
Section 4 of the act contains a proviso that:
“Such district shall not contain any block in which one-half or more of the foot frontage of such block is occupied by buildings and premises actually devoted to commercial, manufacturing, mercantile or other pusiness purposes, not including saloons, * * * and further, such residence district shall *93 not contain the property or premises abutting on a street lying between two consecutive cross or intervening streets, from street to street, or extending for a distance of not less than five hundred feet along such street on which said premises abut, whenever fifty-five per cent, of the foot frontage of such abutting property is occupied for and devoted to manufacturing, mercantile or other business purposes, not including saloons; * * * and on the opposite side of said portion of said street on which said property abuts fifty-five per cent, of the foot frontage abutting thereon is occupied for and actually devoted to manufacturing, mercantile or other business purposes, not including saloons. ’ ’
The provisions of said act exempting any such territory clearly demonstrates the purpose of the General Assembly to limit and confine said districts to the residence sections of a city, and to exclude therefrom all business sections that fall within territory above described. It is therefore not an act intended to afford to electors the privilege of petitioning and voting to prohibit said traffic in any such exempted business- section.
It is objected that inasmuch as any exempted territory, either as blocks or streets, will contain electors residing therein, who, under said act, have neither the privilege to petition nor to vote to prohibit said traffic therein, are thereby deprived of equal rights and privileges therein accorded citizens of other sections of the same municipality.
The question is: “Does such contravene the constitutional rights of such electors under Sections 1 and 2 of Article I of the Bill of Rights?”
These provisions of the Constitution are intended to and do guarantee certain inalienable rights of citizens, such as enjoying and defending life and liberty, acquiring and preserving and protecting property and seeking and obtaining happiness and safety. And such ordains that all political power is inherent in the people and that government is instituted for their equal protection and benefit and they have the right to alter, reform or abolish the same whenever they deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked or repealed by the General Assembly.
The general rule as recognized by the courts of this country does not exclude distinctions and classifications among citizens, *94 and will uphold such, provided it is based upon rational as distinguished from arbitrary grounds. Dibrell v. Morris Heirs, 15 S. W. Rep., 87.
In Bell’s Gap R. R. v. Pennsylvania, 134 U. S., 232, where the question was the power of a state to classify for p'urposes of taxation, it was conceded that a large discretion in these respects was vested in the Legislature.
Mr. Justice Bradley said:
“All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state Legislature or the people of the state in framing their Constitution. But clear and hostile discrimination against particular persons and classes, especially such as one of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. ’ ’
In R. R. v. Ellis, 165 U. S., 157, the court say:
‘ ‘ But if the classification is not based upon the idea of special privileges, can it be sustained upon the basis of the business, in which the corporations to be punished are engaged? That such corporations' may be classified for some purposes is unquestioned. The business in which they are engaged is of a peculiarly dangerous nature, and the Legislature, in the exercise of its police powers, may justly require many things to be done by them in order to secure life and property. ’ ’
The holding of the court in the above case is, that such classification will be upheld if it is based upon some reasonable ground — some difference which bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection.
"Without citing other authorities on this proposition, there is no question but that classification and discrimination among citizens is a proper legislative prerogative, provided it is necessary and is not unreasonable or arbitrary.
Independent of the question in this connection, whether or not the traffic in intoxicating liquors is a lawful one, there is no ground to doubt that under Schedule 18 of the Constitution it is recognized that evil may result from such traffic. It is there ordained that: “The General Assembly may by law provide against the evils resulting therefrom.” True, it does not necessarily follow that because evil may result from a certain traffic, that it is consequently unlawful per se. Certain fac *95 tories emitting loud noises or slaughter houses and places of that character, by reason of their locations, may become nuisances, and are thereby evils, yet if properly located are not. unlawful.
But when it appears that such are nuisances, in the vicinity-in which they may be located, legislation authorizing their1 abatement is upheld on the ground that such are evils and detrimental to public health. So that the Constitution, recognizing that evils may result from the traffic in intoxicating liquors,, may not the Legislature, in the exericse of its authority to'regulate the traffic, in the interest of public morals and the public-welfare, prohibit such traffic in localities devoted to the homes; and dwellings of the inhabitants, and without the purpose of destroying the traffic entirely, confine and restrict it to such sections as are more largely devoted to business and manufacturing pursuits?
It is true that in so doing, privileges may necessarily be accorded some citizens which may be denied to others. But those1 who may reside in business and manufacturing centers are necessarily the few as distinguished from the many who reside in. residence centers. As the authorities say, it is not possible to-realize an ideal or perfect system of equality.
“The police power has dealt and deals with evils as public-sentiment requires, and that other evils of a different kind affecting different interests and having different consequences, are not drawn within the range of legislation, or that they are-regulated and restrained in a different manner and treated with greater severity or leniency, is not deemed a sufficient reason to invalidate a measure, otherwise legitimate, confining itself to-some particular danger * * * as long as the evils are sufficiently distinct, no question is made of -the validity of a partial or unequal exercise of the police power.” Freund Police Powers, Section 721.
It would be no arbitrary act on the part of the Legislature and would be within the exercise of a reasonable discretion to enact legislation to more safely guard against evils calculated to disturb the peace and quiet of residence communities and to' eliminate temptations to evil so contiguous to the homes of the citizens. In the interest of public peace and public morals, there is no doubt as to this proposition.
The vast majorty of the people reside outside the commercial and manufacturing districts of a city. It is on behalf of the- *96 many that such legislation is enacted; it is deemed not possible to reach and benefit equally all the inhaibtants; then if it is for the good of the many, the few who may not .from circumstances be similarly situated, could not be heard to complain, so long as the general public welfare is subserved.
In the ease of exempted territory under the Brannock Law, the law making power says the traffic should be confined to well defined business centers and may be prohibited in well defined residence sections.
Aside from the purpose, as heretofore stated, to relieve altogether residence sections from all contact with saloons in their midst, for the moral good and welfare of the communities, another purpose is to centralize all such traffic in business districts, wherein better police surveillance can be afforded in order that the evils arising from such traffic may thereby be minimized.
Inasmuch as it is evidently not possible that exempted business territory is or could be provided, that would not contain electors residing therein, the very purpose of the act to centralize such traffic and drive it away from residence sections would be defeated, if the validity of the act depended on such electors being afforded the privilege of petitioning and voting thereunder.
It will be observed that such act in no wise seeks to disfranchise an elector. It merely provides that no district can be created in any such exempted territory.
It is deemed best to confine the traffic to such exempted territory under the authority to regulate it, and as the greatest good is provided for the many by so doing, the few who may reside in such exempted territory must necessarily abide by that which subserves the public welfare.
As said in Tiedeman’s Limitations of Police Power, Section 122c.
“As long as a trade does not injure the public health and is the source of no annoyance whatever to the inhabitants of the locality in which it is conducted, it can not lawfully be prohibited. Every man has a constitutional right to follow on his own premises, any calling, provided it does not in any way interfere with another’s reasonable enjoyment of his premises; but if the prosecution of a certain trade .affects another injuriously, the state may so regulate the trade that the injury may *97 be avoided, or reduced to a minimum. If the trade is in itself and necessarily harmful to one’s neighbor or the public health, it may be prohibited altogether; but if it can be prosecuted under certain limitations so as to avoid injury to others, the police regulation must be confined to the imposition of these needed restrictions, and the trade can not be absolutely prohibited. A police regulation can not extend beyond the evil to be remedied. Where, therefore, certain trades and employments which serve some useful purpose and add something to the world’s wealth are harmful to the inhabitants of the locality in which they may be conducted and the harmony may be avoided altogether or considerable reduced by confining them to localities in which the population is sparse and the residences are few, it is altogether permissible to prohibit the prosecution of those trades in other localities. The instances of this kind of regulation are very numerous. * * * In the same way may the sale of intoxicating liquors be prohibited in certain localities; for example, within a certain distance of the state insane asylum, university or state capitol, provided it be conceded that the sale of intoxicating liquors in those localities, in „ a legal sense, threatens an injury to the public.”
In the consideration of this branch of the ease we are not unmindful of the difficulties encountered in its solution and the absence of authorities directly bearing on the question. However, from all the authorities examined reflecting on the constitutional limitations of legislative authority, on the subject matter here presented, we are of the opinion that the act in question is not in contravention of the above provisions of the Constitution.
Again, it is urged upon us that the sale of liquors as a beverage within the limitations already prescribed by law, that is to say, where conducted in accordance with the statutes in this state, is a lawful business; as such it must be classed as business, and therefore its eliminations as a factor in determining business districts or business blocks is an arbitrary, capricious, unreasonable and unnatural classification, and consequently in violation of the Fourteenth Article of the Amendment to the Constitution of the United States, which, among other things, forbids any state from passing or enforcing any law abridging the privileges or immunities of citizens or from denying to any person the equal protection of the laws.
Perhaps no doctrine is better settled, as we have already said, than that the state may nevertheless distinguish, select and class *98 ify objects of legislation, and this power necessarily involves a wide range of discretion, limited only in this, that the classification be based on reasonable grounds and not be an arbitrary or capricious selection or distinction. Railway Co. v. Ellis, 165 U. S., 150.
If we grant, therefore, the established law in this state to be that the Legislature has full power in its discretion to authorize the absolute prohibition of the traffic in an entire municipality, both as to resident and to business sections thereof, as is now provided in the Beal Law (Act of April 3d, 1902), certainly the classification of certain business territory or districts as exempt under' the present law, is in the nature, of a favor or special advantage to the traffic, as to which its opponents, not its adherents, might complain. The classification, however, is based on most reasonable grounds, and the object of the law, to-wit, to “provide for local option in residence districts,” is consistently maintained when business districts are exempted.
Is it an unreasonable classification then which prevents saloon property from being considered as business property and forbids it being considered either way ? We think not. The power to eliminate it altogether must be conceded as resting in the Legislature of this state. Moreover, there is a further reason which appears and that is that since this is the very business in question, the object of the law could be defeated were this provision eliminated, since otherwise it is easy to conceive that colonies could be formed on streets in residence sections imade up largely, if not entirely, of this very business, whereby the requisite fifty-five per cent, of business .frontage would be easily formed, and the most salient purpose of the law nullified.
An important point is also urged with much force that the General Assembly has no power to enact a penal statute to be called into execution by a vote of the electors in any territory less than a political subdivision of the state, clothed with corporate powers. , That is to say, that such a law can only operate through a country, a township, a village, a city or a ward or precinct of a city. This point is novel and in the very limited time which we have had for consideration of this case by reason of the urgent necessity for immediate decision, we can not find that it has ever been raised before in any court. We think it js.-.no longer a question in this state that it is within the scope of *99 the legislative power to enact laws which shall not become operative until the happening of a particular event, or on some contingency thereafter, or upon the performance of some special condition, such as vote of the people. Such a statute is the act of the Legislature, and in all respects valid from the time of its passage. It is called into execution upon the happening of the contingency. The Legislature can not delegate its power to make a law, but it may make the law and delegate the power to call that law into operation.
The discussion of Judge Ranney in the case of Railroad Company v. Commissioners, 1st O. S., 77, was the beginning of the Ohio adjudications upon this point, and we refer to his reasoning in that interesting case. And see also, Field v. Clark, 143 U. S., 649; Gordon v. State, 46 O. S., 607; Cass v. Dillon, 2d O. S., 607; Trustees v. Cherry, 8 O. S., 564; Newton v. Commissioners, 26 O. S., 618.
We have it well settled, therefore, that a law to be called into operation upon the happening of a reasonable contingency, need not be called into execution throughout the entire state. It may, without doing violence to the uniformity clause of the Constitution, so become operative and effective in any one of the minor political subdivisions of the state. But it is now urged that this power to so call into execution such penal statute can only be delegated to the inhabitants of one of these recognized political subdivisions of the state; that to authorize a carving out of arbitrary territory for the single purpose of permitting a particular statute to be called into execution within it, and without devolving upon it any govermental functions, was a thing never contemplated by the framers of our state government, and transcends legislative authority. And further, that the territorial subdivision of this state into various political entities can only be made for governmental purposes, and such ■ territory must be either a county, township, village, city, ward or precinct.
Just upon what particular reason, beyond what has been given above, can be advanced for declaring the law in question unconstitutional because of the permissive and arbitrary territorial limitations, we do not perceive. We have a number of precedents involving somewhat similar territories. Thus Section 6945 makes it unlawful to sell liquor within a distance of four *100 miles of a place where people are collected for religious worship, or where there is a celebration or reunion of the Grand Army or Sons of Veterans or Union of Veterans. Section 6946a- makes it unlawful to sell or give away liquors within a mile and a half of any soldier’s home. Likewise, it is further provided by Section 6946, among other things, that it shall be unlawful to sell or give away liquors within two miles of any agricultural fair. In each of these cases, and especially the last named case, the territory affected is unquestionably arbitrary. A fair grounds may be located at any point the association desires and may be changed each year and yet the prohibited territory Would continue to follow the change. In the case of a camp meeting or a soldiers reunion the boundary might change every hour during the day by the change of the location of the meeting or its size. That these acts were sustained, see Heck v. State, 44 O. S., 536; State v. Long, 48 O. S., 509; Theis v. State, 54 O. S., 245.
James M. Butler, for the City of Columbus and the Mayor.
Thomas H. Clarke, W. B. Wheeler and L. D. Lilly, for the Anti-saloon League.
George B. Okey and Gumble & Gumble, for the liquor interests.
Before a court can declare a law to be unconstitutional it must be .clear that it is in irreconcilable conflict therewith. Upon the considerations above stated, we are not able to see in what respect it so conflicts with any provision of the Constitution and therefore hold the law to be constitutional. ,
Having reached these conclusions upon consideration of the demurrer to the petition in the mandamus ease, we have not found it necessary to consider the question made in argument, whether in any case a court of equity will enjoin or interfere with the holding of elections, even where it involves the question of the expenditure of the public funds in the holding of an election under an unconstitutional law.
Judgments will be entered in each case in accordance with this opinion.